## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

DWIGHT OSCAR
BREWINGTON,

        Plaintiff,

v.

DR. VASLENKO,[1]

        Defendant.

)
)
)
)
)
)
)
)
)
)

CV421-261

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, filed this 42 U.S.C. § 1983 lawsuit while housed at the Chatham County Detention Center.[2]  *See* doc. 1 at 3. Plaintiff's Complaint was previously screened pursuant to 28 U.S.C. § 1915A.  *See* doc. 6.  While that order dismissed claims against Correct Health and the Chatham County Sheriff's Complex, the Court found that

---

[1] The docket reflects what appears to be the wrong spelling of Defendant Dr. Vlasenko's name.  The spelling in the body of this order corresponds with the Defendant's own briefing rather than Plaintiff's version.

[2] Plaintiff sought to proceed *in forma pauperis* (IFP) but failed to return his PLRA forms as ordered by the Court.  Doc. 3.  However, a party's failure to comply with that procedure does not deprive the Court of jurisdiction.  *See White v. Lemma*, 947 F.3d 1373, 1378 (11th Cir. 2020) ("[A]lthough a non-IFP prisoner must pay the filing fee or face dismissal, [cit.], our precedent also holds that the timely payment of a filing fee is not a jurisdictional requisite." (internal quotation marks and citations omitted)).

Plaintiff had stated a claim against Defendant Dr. Vlasenko. *See id.* He was thus served with the Complaint, doc. 7, which he Answered on August 18, 2022, doc. 12.

Currently pending is Dr. Vlasenko's Motion for Summary Judgment, filed on September 19, 2022 to which Plaintiff did not respond. Doc. 14. After the Court ordered Plaintiff to show cause as to why the case should not be dismissed for Plaintiff's failure to prosecute, Plaintiff filed an affidavit explaining that he is a lay person with no legal training who does not understand the Rules of Civil Procedure, and moreover, that he has no access to a medical dictionary that "will explain medical terms that he is wholly unfamiliar with." Doc. 20. Plaintiff also contended, without further explanation, that his action is meritorious and swears that justice would be "best served if his case proceeds to a trial upon the merits." *Id.* Therefore*,* although he complied with the Order to Show Cause, he has not properly responded to the Defendants' Motion for Summary Judgment. He also did not file a Statement of Material Facts controverting the Defendant's own. *See* S.D. Ga. L. Civ. R. 56.1. ("[I]n addition to the Parties' briefs, there "shall be annexed to the motion a separate, short, and concise statement of the material facts

as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof."). The Court, therefore, proceeds to consider Defendant's Motion.

## BACKGROUND

Defendant's unopposed Motion for Summary Judgment states that Plaintiff was incarcerated at the Chatham County Jail beginning August 25, 2019. Doc. 14-2 at 1. When entering the jail, Plaintiff made no complaint of knee pain, but he did report a history of shoulder pain. *Id.* at 2. Plaintiff first reported knee pain to the jail on November 6, 2019. *Id.* He was seen two days later, but he did not report pain during the visit. Doc. 14-1 at 3. One year later, on November 10, 2020, Plaintiff complained of knee pain and requested a knee brace, which was ordered. Doc. 14-1 at 3; doc. 14-2 at 2. He again requested to see the doctor for knee pain in August 2021 and was seen in September of 2021. Doc. 14-2 at 3. Because by then he had made multiple complaints regarding his knee, Dr. Vlasenko ordered an x-ray, which revealed no evidence of acute fracture or soft tissue swelling. Doc. 14-2 at 3. Based on the x-ray findings, Dr. Vlasenko determined that Plaintiff needed no further treatment. *Id.*; doc. 14-1 at 3-4. Plaintiff made no further complaints of

knee pain, even though he was seen in January 2022 for his annual physical and in a May 2022 chronic care visit.  Doc. 14-2 at 3.

Similarly, Plaintiff's shoulder pain has persisted for some time, and he made several kiosk requests for treatment.  He first requested treatment on August 27, 2019 but did not report significant issues upon being seen.  Doc. 14-2 at 3-4; doc. 14-1 at 4.  On September 3, 2019 Plaintiff again complained of shoulder pain.  Doc. 14-2 at 4.  He was seen three days later by a nurse practitioner, but he reported only moderate pain.  *Id*.  Because Plaintiff's shoulder movement appeared limited, the nurse practitioner ordered an x-ray of his shoulder.  *Id.*; doc. 14-1 at 4. The x-ray revealed no acute fractures or dislocation and indicated mild degenerative joint changes and possible impingement syndrome.   Doc. 14-2 at 4.  He was prescribed ibuprofen, instructed on isometric shoulder exercises, and given further instructions for self-care.  *Id*.

Plaintiff again complained in October, but after he was reminded that he had been treated already, he did not submit a kiosk request until January 26, 2021, when he complained of pain running all the way down his arm.  Doc. 14-1 at 6.  Fearing cervical radiculopathy (a pinched nerve), Dr. Vlasenko ordered a cervical spine x-ray.  Doc. 14-2 at 5.  Plaintiff

indeed had a slightly pinched nerve, and the radiologist concluded that the x-ray showed "degenerative changes," described as normal age-related degeneration of the vertebrae by Dr. Vlasenko. *Id.* Dr. Vlasenko prescribed pain medication to treat the issue.

In the interim between Plaintiff's kiosk-based sick calls, Dr. Vlasenko saw Plaintiff regularly as part of his chronic care clinic treatment.  During the November 10, 2020 visit, Plaintiff complained about his shoulders, doc. 14-2 at 4 (and knee, doc. 14-2 at 2-3), and although Dr. Vlasenko charted a full range of motion and found that Plaintiff's pain was under "fair" control, he ordered more x-rays—this time on both shoulders.  Doc. 14-1 at 5; Doc. 14-2 at 4-5.[3] The x-rays were unremarkable for injury.  Doc. 14-2 at 5.

Plaintiff made a last sick call on August 18, 2021 claiming, as he does in this case, that he had a "crack in [his] neck and a chipped bone in [his] shoulder pushing down on [his] nerve.  Doc. 14-2 at 6.  Dr. Vlasenko again reviewed the x-rays, which showed no such diagnosis, noted Plaintiff's full range of motion, and reordered pain medication.  *Id.*

---

[3] During this visit, Plaintiff indicated that his shoulder pain was caused by a pre-incarceration motor vehicle accident, for which he did not seek treatment.  Doc. 14-2 at 4.

Plaintiff filed the present case around one month later, alleging that he slipped getting out of the shower while incarcerated at the jail, injuring his knee and shoulders. Doc. 1 at 5. Plaintiff alleged that although he has complained to medical staff about his fall and subsequent pain, the treatment has not been effective. *Id.* He claimed that Defendant Vlasenko told him he needs surgery to permanently alleviate the problem, but the doctor has refused to recommend Plaintiff for surgery. *Id.* According to Plaintiff, Defendant Vlasenko told him that the Sheriff will deny the surgery as it is likely cost prohibitive, and further, that Dr. Vlasenko tries to pacify him with pain medication rather than recommend him for the surgery he needs to fix the problem altogether. *Id.* 5-6. Plaintiff complains that despite the treatment, he is still in pain, especially at night because of the long time between pill call. *Id.* at 6.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, motions for summary judgment are granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if . .

. it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997); *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)). The Court must view factual disputes in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor," *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. *Anderson*, 477 U.S. at 255. Additionally, the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The Defendant here does not bear the burden of proof at trial, and therefore may "satisfy his initial burden on summary judgment in either

of two ways." *McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993)).  First, the Defendant "may simply show that there is an absence of evidence to support the [Plaintiff's] case on the particular issue at hand."  *Id.* (citation omitted).  Or second, Defendants may "provide affirmative *evidence* demonstrating that the [Plaintiff] will be unable to prove its case at trial."  *Id.*  (citation omitted and alterations in original).  The burden then shifts to Plaintiff to "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  In this case, the Court is mindful of the obligation to liberally construe *pro se* pleadings, but "*pro se* litigants are required to comply with applicable procedural rules."  *Ramchandani v. Sanghrajka*, 2022 WL 16549470, at *1 (11th Cir. Oct. 31, 2022) (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)).

Defendant here sought to seal Plaintiff's medical records submitted in support of his Statement of Material Facts.  *See generally* Doc. 15; *see also* 14-2 at 1.  The Motion to Seal was denied, and the Clerk was directed to return the materials to the Defendant.  Doc. 19.  The Defendant did not resubmit the medical records to the Court.  Presently, even though

the Statement of Facts cites to and relies upon medical evidence, that evidence is not in the record. *See* doc. 14-2 at 1 (citing to, for example, "Ex. 'A,' CorrectHealth Medical Records ['CH'] at 0147."). However, Defendant Vlasenko, as the party moving for summary judgment, is not required to produce evidence in support of his motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden is [not] on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Moreover, while the Local Rule requires that each statement of fact be supported by a citation to the record, all material facts set forth in the statement are deemed admitted unless controverted by the Plaintiff. S.D. Ga. L. Civ. R. 56.1. Plaintiff did not provide his own Statement of Material Facts controverting those asserted by Defendant.

Accordingly, despite the absence of the medical records relied upon by Defendant, he has discharged his summary judgment burden by

showing that there is an absence of evidence to support Plaintiff's claims, and moreover, that the evidence available, even construed in the light most favorable to Plaintiff, establishes Plaintiff's claims are meritless. *See generally Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) (recognizing that "to defeat a motion for summary judgment, [the plaintiff] must adduce specific evidence from which a jury could reasonably find in his favor"); *see also Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990) (Prisoner's "claim of serious injury is only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses, and we therefore discount it."). For the reasons discussed below, defendant's Motion should be granted, and the Plaintiff's case should be dismissed.

## DISCUSSION

As the Court previously explained in its screening order, to state a claim of deliberate indifference to serious medical needs, Plaintiff must allege "(1) a serious medical need; (2) [the] defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam), *abrogated on other grounds by Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007).  The Court previously assumed that Plaintiff had alleged a serious medical need for the purposes of frivolity review.  Doc. 6 at 4.  However, the uncontroverted evidence submitted by the Defendants calls this assumption into question.

In this Circuit, "a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).  However, Plaintiff does not dispute that he has no diagnosis of a crack in his neck or a chipped bone in his shoulder.  Instead, summary judgment evidence shows that Plaintiff suffered relatively minor pain associated with arthritis.

Most importantly, even if Plaintiff had rebutted Defendant's contention that he has no serious medical need, the record does not reflect deliberate indifference *See Estelle v. Gamble*, 429 U.S. 97, 104–06, (1976) (holding that the Eighth Amendment proscription against cruel and unusual punishment does not permit prison personnel to subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs."). To establish deliberate indifference, a plaintiff must show "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Conduct that is more than mere negligence includes: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Plaintiff's Complaint suggested that Defendant intentionally denied or delayed treatment, but Plaintiff has not supported his contention that Defendant delayed care for nonmedical reasons or controverted Defendant's argument that he *did* receive care. Specifically, although his Complaint alleges that he "needs" surgery but was denied it for cost reasons, the record reflects both no need for surgery and no evidence of the denial of treatment. Rather, Defendant attested that he provided care on many occasions. Ultimately, it appears Plaintiff simply

disagrees with the diagnosis and course of treatment. Such contentions do not constitute deliberate indifference and cannot support a constitutional claim. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.").

Medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted). This case does not represent such an occasion, as is evidenced by the repeated instances of treatment Plaintiff received. Even if Defendant misinterpreted the x-rays or could have provided more aggressive treatment, mere negligence or medical malpractice is "not sufficient" to constitute deliberate indifference. *Mandel v. Doe*, 888 F.2d 783, 787-88 (11th Cir. 1989); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, Plaintiff's claim would fail even if he had responded to the motion with some argument as to the diagnosis or propriety of the course of treatment.

Defendant was simply not deliberately indifferent to his condition, as clearly indicated by the record.

## CONCLUSION

For all the foregoing reasons, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED**. Doc. 14. This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Notwithstanding the dismissal of Plaintiff's case, he must pay his filing fee.[4]  Plaintiff never returned his PLRA paperwork and thus the Court is unable to determine the average monthly deposits he receives. While he does state that he receives $650.00 per month in disability payments, the Court is unable to determine whether funds "exist" for the purposes of   28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  He therefore owes a $0 initial partial filing fee.  However, Plaintiff's custodian (or designee) shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount

---

[4] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately.  In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

**SO ORDERED and REPORTED and RECOMMENDED,** this 5th day of December, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA